Johnson, J.
The first section of the act of March 13, 1868 (S. & S. 710, 711), under which the bonds in controversy in this case were issued and sold, authorizes the issue of bonds “bearing interest payable semi-annually, at a rate not exceeding eight per centum per annum.” The third section provides, that “ the bonds so issued shall, in no case, be sold for a less sum than their par value ; ” and, also, that the bonds shall bear date the day of the sale, and provides for a complete record of the transaction.
That the parties intended to evade that provision of the statute against a rate of interest exceeding eight per cent, per annum, payable semi-annually, is clear.
That the form, which they gave to it, is not conclusive of its real character, as between these parties, is equally clear. These relators dealt directly with the board of education, and were parties to this attempted evasion of the statute. If that attempt avoids the bonds, they must suffer the consequences.
As a general principle, the agents or officers of a corporation like this, can not bind the public beyond the scope of its powers.
Where the duties and powers of these agents or officers are prescribed by statute or charter, all who deal with them are bound to know the extent of these powers.
It results from this doctrine, that contracts made that are unauthorized by the statute or charter, are void, and that the corporation may protect itself by the plea of ultra vires. The exception to this rule, in favor of bona fide holders of negotiable securities, need not be here noticed. There is, however, another class of exceptions, whose limits are not, as yet, very clearly defined, arising out of equitable considerations, that we may have occasion to notice further along.
*524 This statute imposes two limitations on the power of the board in the issue and sale of bonds: they shall not bear a rate of interest exceeding eight per cent., and shall not be sold at less than their par value.
If either inliibition were omitted, the other could be readily evaded.
By the sale of bonds, at a discount, the semi-annual interest agreed to be paid would be increased beyond eight per cent., and thus, that clause of the statute would be evaded.
These two provisions, taken together, limit the powers of a board of education, so that it can neither directly nor in directly pay interest at a higher rate than the statute prescribes.
No claim is, or can be, made that the bonds were, in fact,sold for less than their par value, as an equal amount of cash was paid and received therefor, and the money was expended as public funds, for the purposes for which it was borrowed.
The resolution of the board fully explains the real transaction, and conclusively shows that the intention was to pay an excessive rate of interest, and that it was not the intention of either party to sell the bonds at less than their face value.
So far, then, as this intention of parties gives character to and affects the transaction, it must be regarded as an attempt to evade the interest clause of this statute, and not to sell the bonds at less than par.
Conceding that the court will, as Between the parties, go behind the face of the bonds, and ascertain the real nature of the transaction, we are left to determine whether an agreement to pay illegal interest, and the giving of these orders therefor, which have never been paid, and which are themselves void, entitles the corporation to plead ultra vires, and so avoid payment of the bonds. It was the object of this statute to protect the public. No obligation should be sold at less than par, and no contract to pay a higher rate of interest than that named could be made.
*525 By complying with this statute the public would receive full value for the bonds, and be under no obligation to pay usurious interest.
'By non-compliance, the public would be injured to the amount of the discount, or of the excess of interest paid.
If the relief now sought be granted, it can not be claimed that any loss or injury results to the school district. It is the case of an intended violation of the statute, never consummated.
The iniquity is in thought, not in deed. It is said, however, that, taking the transaction as a whole, it is tainted with fraud and therefore void, and this view is sought to be supported by the analogies of usury laws.
In Ohio, an usurious contract does not carry with it that deep moral stain that attached under the usury laws of England and some of the states. Here, such a contract is not void, and a recovery thereon, to the extent of the loan and legal interest, can be had. The theory on which this principle is founded, is that, to the extent of the usurious interest, there is a failure of consideration, and,' therefore, as to the usury the contract is voidable only. Selser v. Brock, 3 Ohio St. 302.
These bonds, if void at all, are so, not on the ground of any deep moral stain, arising from the contract for usury, but from a want of capacity in the board to make such a contract. They are illegal, if at all, because unauthorized by statute, i. e., because the board had no power to make such a contract.
As was said in Bank of Chillicothe v. Swayne et al., 8 Ohio, 289 : “ The contract is void, not because the rate of interest is greater than the rate allowed by the general law of the land, but because it is such a contract as the plaintiffs had no capacity or power to make.”
These bonds are such as the board had capacity to issue. Upon their face they are in strict conformity to the statute. They were, in fact, sold at par, and the money has been received into the treasury and used for the purpose intended *526 by the statute. The public has had the full benefit of the loan, and has not sustained, nor is it liable to sustain, any loss or injury by reason of this outside agreement to pay excessive interest. If this was an action on the bonds, unaffected by this statute, there could be no doubt of a reeovery for the full amount loaned, with the legal rate of interest then in force according to the construction placed upon our interest laws. Neither can there be any doubt that the contract to pay usury, evidenced'by the orders, would be void for want of consideration to support it.
As has been already said, if this excess of interest had been paid the statute would have been violated, but as the promise to pay excessive interest was purely executory, and the orders evidencing this promise are void, and are offered for cancellation, and no injury has happened or can happen to the public, no sound reason can be given why the corporation should not pay its just debt.
The negotiations for the loan, though in their inception an entirety, for the loan of a sum of money at fifteen per cent., yet, as consumated by the contract actually made, consisted of two distinct promises by the board, based upon a single consideration. The one, evidenced by the bonds in strict conformity with the statute; the other, evidenced by the orders covering the excess of interest. The board did not intend to make one contract, nor did it. In its attempt to exercise the powers conferred, the two agreements were made, both regular and valid on their face, but one clearly in excess of the powers granted.
This brings the case cleai’ly within the rule: “ That when a power, created by statute, has been fully executed, and something not authorized by the statute has been added, but which is clearly distinguishable from the rightful execution, the execution of the power is good, so far as authorized by the statute, and void only as to the excess,” i. e., at law. Comm’rs. of Knox Co. v. Nichols, 14 Ohio St. 260.
In such cases the general rule is, that “ where there is a *527 complete execution of the authority, and something ex abundanti is added which is improper, then the execution is good and the excess only is void, but where there is not a complete execution of the power, or where the boundaries between the excess and the rightful execution are not distinguishable, then the whole is void.” Story on Agency, 166; Doty v. Knox County Bank, 16 Ohio St. 133; 2 Kent’s Com. 467.
In Widoe v. Webb, 20 Ohio. St. 435, it is said, that “ where for a legal consideration a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful and void for the residue. Whenever the unlawful part of the contract can be separated from the rest, it will be rejected and the remainder established.” Oare must be taken not to confound this rule with another equally well settled, that where one of two considerations is illegal, and the other legal, the illegality of the one avoids the promise founded on both.
In the former case there is one lawful and valuable consideration to support two promises, one legal, the other illegal, that are separable. In the latter case there are two considerations, one legal, the other illegal, to support one promise. The reason for this well-marked distinction is, that in the latter case, the promise being supported by two considerations, one lawful, the other unlawful, is an entirety based upon both, and can not be apportioned, and it is against public policy to enforce a promise so supported. In such a case both considerations, as a tohole, are the basis of the entire promise. Where, however, the whole consideration is lawful, and the promisor undertakes to do two things, one that is lawful, and the others unlawful, and they are clearly distinguishable, the good consideration will support the lawful promise.
The case at bar is one of two promises, one lawful, the other unlawful, founded on one lawful consideration. The unlawful promise evidenced by these orders is separate and distinct from the lawful. The former is void because prohibited by statute, while the latter is expressly authorized, *528 and is supported by a valid consideration, to wit, the money loaned. It may be said that these rules do not apply to corporations, but we are unable to discover any reason why they should be exempt of such wholesome principles intended to compel natural persons to pay their just debts.
It is said further that this will open the door to frauds upon the statute and render it nugatory. Under the commercial law bonds like these, regular on their face, are not void but valid in the hands of bona fide holders, however much the statute may have been evaded. Against such holders the statute affords no protection.
As to the party dealing with the board, we all agree, that.if he, either directly or indirectly, purchase the bonds at less than par, or receives interest in excess of the lawful rate, he can not recover because the illegal contract has been in part executed. But where, as in this case, the plaintiff has been guilty of no illegal act, for the statute does not make it an offense to contract for excess of interest, and the public has in no way sustained any loss or injury, a majority of the court is unable to see the force of the objection. Human tribunals take cognizance of human actions that affect the rights of others. It is beyond their power to deal with intentions not consummated by actions.
That these relators, at one time, intended to take unlawful interest, which intention has been abandoned, furnishes no reason, either in morals or in law, why this school district should not pay its just debts, incurred for a lawful purpose, when it has received the benefit of the money borrowed.
The defendant resists the payment on the further ground, that the facts show that the board of education, or at least some of its members, were guilty of fraudulent practices, whereby this debt was incurred, for the payment of which this money was borrowed, and it is sought to charge re: lators with this, not because they had any knowledge of these practices, but because they bargained for illegal interest, and therefore they are chargeable with the fraudulent acts of the members of the board, of which they were *529 wholly innocent. It was no part of their duty to investigate the circumstances under which that debt was created— to constitute themselves an investigating committee for that, purpose. They had the right to assume that the officers-of the corporation had performed their lawful duties. IN either were they charged with the duty of seeing that the-money was properly expended. The debts had been incurred. This money was borrowed to pay that debt. The-conspiracy, if there was one among the members of the board, to unlawfully make money for themselves, was-wholly a distinct transaction from that of selling these-bonds.
Hence, if it be conceded that they were parties to the attempted fraud on the statute, in the contract for unlawful interest, they did not thereby adopt all prior acts of the-board of directors in letting contracts and incurring the debts, of which they had no knowledge, and which were-entirely independent and distinct from the illegal act with which they are charged.
As well might it be said, that where A joins with B to commit larceny, he thereby adopts and makes himself a party to a previous act of B in the commission of homicide. The true application of the rule is, that where two- or more form a conspiracy to do an unlawful act, and before it has been committed another joins them in doing the-act, it is no defense for him, that the plan was formed before he became a party to the conspiracy.

Peremptory writ awarded.

Okey, J.
Differing widely from my brethren, as to the merits and proper disposition of this case, I beg leave to briefly state the grounds of that difference.
The relators are, under the circumstances, chargeable with notice of the fradulent acts of the -board which issued and negotiated the bonds ; and the present board can not-be regarded as in other than the proper discharge of its duty, in interposing a defense to the allowance of the- *530 peremptory writ. But even if the hoard were not chargeable with such notice, the writ should not be awarded.
In their petition, which is incorporated in the alternative writ, the relators do not claim to have loaned money, but say “ they purchased all of said bonds, . . . and that they are still the owners and holders of them.” This seems to have been the real transaction, though whether it was a loan or a purchase is, perhaps, not material.
Dealing directly with the corporation, the relators were chargeable with notice of the extent of its powers. They knew that the corpoi’ation was, in terms, prohibited by the .statute from selling the bonds “ for a less sum than their par value; ” and, consequently, that a sale of the bonds, for less than such par value, would vest in the purchasers no "title. The question is one of corporate power.
'Was this a sale for less than par value? The question should be determined, not by the mere form the contract was made to assume, but from.the real nature of the transaction. Upon this subject there is no conflict in the authorities. Any other rule would lead to constant evasion of the statutes.
The relators never intended to pay, never agreed to pay, never paid $7,200 for the bonds to that amount. The orders were as clearly part of the consideration for the $7,200 as were the bonds. The money was given for the bonds and the orders. The device resorted to was a mere fraud on the statute, and was so intended.
In the opinion of the majority the transaction may be regarded, substantially, as two contracts — one valid, and the other void. But the integral unit can not be divided into whole numbers. The contract is single, entire, indivisible; .and, having been made with a corporation, in violation of the express terms of the statute forbiddiug it, such contract is necessarily void.. Miami Ex. Co. v. Clark, 13 Ohio, 1; Widoe v. Webb, 20 Ohio St. 435 ; ante, 341, and cases cited. The repentance, the offer to restore the orders, can not render a void contract valid.
A contract like this, if we should regard it as a loan of *531 •money, would not be enforced as the court enforces this contract, even between individuals. Where a statute authorizes a higher rate of interest than six per cent., which is the rate allowed by the general act on the subject, -an agreement, in any form, for interest in excess of such higher rate, will, as between individuals, render the contract void, and the lender may recover his debt with six percent, interest only. Claypool v. Sturges, 10 Ohio St. 440; Bunn v. Kinney, Samyn v. Phillips, 15 Ohio St. 40, 218; West v. Meddock, 16 Ohio St. 817.
The majority of the court, in awarding the writ, seem to be of opinion that it is not only lawful, but just and proper, that Perrysburg should be compelled to pay these bonds. I humbly submit that to award the writ is to make for the parties a contract which neither of them ever made ■or intended to make. Moreover, Perrysburg has been defrauded, in building and paying for the school-house in ■question, in sums, amounting in the aggregate, to several thousand dollars; and, under the circumstances set forth in the record, the relators are, as already .stated, chargeable with knowledge of the fraud. The contract should, therefore, be regarded as fraudulent as well as unlawful. The court has the power, of course, to compel the payment ■of this additional sum; but with respect to the transaction out of which the obligation arises — there is no alchemy by which a thing so base can be transmuted into that which is pure.